**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROL NOTOBARTOLO, | : | |
| **Plaintiff,** | : | |
| v. | : | **CIVIL NO. 06-2128** |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social Security, | : | |
| **Defendant.** | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

RUFE, J.                                               December 18, 2007

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Carol Notobartolo

("Plaintiff") requests review of the final decision of the Commissioner of the Social Security

Administration, Michael J. Astrue ("Commissioner"), denying her application for disability

insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI

of the Social Security Act, 42 U.S.C. §§ 401-33, 1381-83f.  Specifically, Plaintiff moves for

summary judgment, or in the alternative, remand.  Defendant opposes the Motions, and also moves

for summary judgment.  This Court referred the matter to Magistrate Judge L. Felipe Restrepo for

a Report and Recommendation.[2]  In a report submitted on June 28, 2007, Magistrate Judge Restrepo

recommended that the Court deny Plaintiff's Motions and affirm the final decision of the

Commissioner.  Plaintiff timely objected, and the matter is now ready for decision.  For the reasons

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, replacing Jo Anne B. Barnhart.  Therefore, in accordance with Federal Rule of Civil Procedure 25(d)(1), Mr. Astrue is substituted for Ms. Barnhart as the Defendant in this action.

[2] See Local Rule of Civil Procedure 72.1.I(a), 28 U.S.C. § 636(b)(1)(B).

that follow, and after careful review of the entire record, the parties' submissions, and the applicable law, the Court will approve and adopt Magistrate Judge Restrepo's Report and Recommendation.

## I.  PROCEDURAL HISTORY

Plaintiff Carol Notobartolo is a 46-year-old woman who applied for DIB and SSI benefits on March 6, 2003.[3]  She claimed in her application that she has been disabled since April 25, 2001,[4] due to "hepatitis C, gout, asthma, degenerative disc disease of the cervical and lumbar spine, depression, and a history of alcohol abuse."[5]  After her application was denied at the initial-review level,[6] Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"),[7] which was granted.  At the hearing before the ALJ on July 21, 2004, evidence was presented, including the testimony of Ronald Sholtis, an impartial vocational expert, and the plaintiff.[8]  On August 20, 2004, the ALJ ruled that Plaintiff was not under a disability, and thus denied her claims.[9]  On October 20, 2004, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council.[10]  The Appeals Council denied Plaintiff's request for review on March

---

[3] R. 16, 34.

[4] R. 17.

[5] R. 18.

[6] R. 39-42.

[7] R. 43.

[8] R. 16.

[9] Id.

[10] R. 12.

17, 2006.[11]  Thus the ALJ's decision became the final decision of Commissioner in this case.[12]

## II. STANDARD OF REVIEW

A court reviewing a Social Security case must base its decision on the record of administrative proceedings and the pleadings of the parties.[13]  The court's review of legal issues is plenary, but its factual review is limited.[14]  The court must determine whether the record contains substantial evidence to support the ALJ's factual findings, and whether the Commissioner applied the proper legal standards in making its decision.[15]  For these purposes, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16] It is more than a mere scintilla, but may be less than a preponderance of the evidence in the record.[17] If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[18]

A district court must review *de novo* those portions of a magistrate judge's Report and Recommendation to which a party has objected.[19]  In general, a court may in its discretion

---

[11] R. 8.

[12] Id.

[13] 42 U.S.C. § 405(g).

[14] Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

[15] See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

[16] Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); Jesurum v. Sec'y of the U. S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

[17] Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

[18] Fargnoli, 247 F.3d at 38.

[19] 28 U.S.C. § 636(b)(1)(c).

"accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[20]

### III. DISCUSSION

#### a. Social Security Law

In order to qualify for SSI or DIB benefits, a person must be found to have a "disability" for purposes of the Social Security Act.[21]  Under the relevant provisions of the Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[22] An ALJ reviewing an application for disability benefits must employ the five-step process established in the Social Security Regulations ("the Regulations") to determine whether, under the definition above, a disability exists.[23]  At step one, the ALJ must determine whether the applicant is engaged in "substantial gainful activity;" if she is, the claim is denied.  If the applicant is not engaged in substantial gainful activity, the ALJ must determine at step two whether the applicant suffers from a severe, medically determinable impairment which significantly limits her ability to work.  If the applicant has such an impairment, the ALJ must determine at step three whether the impairment found meets or equals any of the impairments conclusively presumed to be disabilities

---

[20] Id.

[21] See 42 U.S.C. §§ 423(a)(1)(D), 423(d), 1382c(a)(3).

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3).  "Disability" is defined identically in Title II and Title XVI of the Social Security Act, governing DIB and SSI benefits, respectively.  Id.; see also Barnhart v. Thomas, 540 U.S. 20, 23-24 (2003).

[23] Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

listed in Part 404, Subpart P, Appendix 1 ("the Listings").[24]  If the applicant has a severe impairment

that does not meet or equal an impairment in the Listings, the ALJ must determine at step four

whether the applicant has the Residual Functioning Capacity ("RFC") to perform her former relevant

work.  If the applicant does not have the RFC to perform her previous work, the Commissioner must

establish at step five that the applicant has the RFC to perform other work that exists in the national

economy, considering her age, education and work experience.   At this fifth step, if the

Commissioner cannot demonstrate that the applicant has the RFC to perform other existing work,

the ALJ must find the applicant to be disabled.

### b.  The Decision of the ALJ

On August 20, 2004, the ALJ denied Plaintiff's disability claim.[25]  In making the

decision, the ALJ considered documentary evidence and the testimony of both Plaintiff and an

independent vocational expert, applied the five-step process as required in the Regulations, and

found, in relevant part, as follows: (1) Plaintiff had "not engaged in substantial gainful activity since

the alleged onset of disability"; (2) Plaintiff's alleged impairments are considered "severe" under the

Regulations; (3) Plaintiff's impairments do not meet or equal any impairment found in the Listings;

(4) Plaintiff is unable to perform any of her past work; (5) Plaintiff has the RFC "to perform a

significant range of light work"; (6) Plaintiff has the RFC to perform jobs which exist in significant

numbers both in the national economy and locally; and as a result, (7) Plaintiff is not "disabled" for

purposes of the Social Security Act.[26]  The ALJ also found that Plaintiff's testimony and allegations

---

[24] See 20 C.F.R. §§ 404.1520(d), 416.920(d).

[25] R. 3-24.

[26] R. 22-23.

regarding her impairment were "not totally credible."[27]

### c. The Report & Recommendation

After reviewing the Record and hearing oral argument in this matter, Magistrate Judge Restrepo produced a thorough and well-reasoned Report and Recommendation ("R&R"), in which he recommended that the final decision of the Commissioner be affirmed.[28] Specifically, Magistrate Judge Restrepo found that substantial evidence supported both the ALJ's finding that there were inconsistent medical opinions on the extent of Plaintiff's RFC and the ALJ's ultimate resolution of the inconsistency.[29]  He also found that substantial evidence supported the ALJ's determination that Plaintiff's impairments did not meet or equal an impairment in the Listings,[30] and the ALJ's finding of Plaintiff's RFC to perform light work.[31] Finally, the magistrate judge found that the ALJ properly determined that Plaintiff's testimony was not fully credible.[32]

### d. Plaintiff's Objections

Plaintiff timely objected on several grounds.  First, Plaintiff argued that, when assessing the inconsistent medical evidence in the record, the ALJ failed to accord sufficient weight to the opinions of treating and examining medical sources.[33]  Plaintiff next argued that her

---

[27] R. 23.

[28] R&R at 20-21.

[29] Id. at 9-12.

[30] Id. at 15.

[31] Id. at 18.

[32] Id. at 20.

[33] Pl.'s Objections at 1.

impairments do equal an impairment in the Listings.[34]  Lastly, she argued that substantial

evidence did not support the ALJ's findings regarding Plaintiff's RFC, Plaintiff's credibility, or

the ALJ's ultimate determination that Plaintiff is not disabled.[35]

*e. Analysis*

This Court has conducted a *de novo* review of each part of the magistrate judge's

report to which objection was made, and will now address each objection in turn.

**1.  Plaintiff's First Objection**

Plaintiff first argues that the magistrate judge erred in determining that substantial

evidence supported the ALJ's resolution of inconsistent medical evidence in the record.  The ALJ

found the opinion of Plaintiff's treating psychiatrist, Keith Goffe, M.D., that Plaintiff "would not

be able to function in any significant work capacity" to be inconsistent with the opinions of other

medical expert sources, as well as with descriptions of Plaintiff's "improved symptomology"

found in the documentary evidence.[36]  Because of this inconsistency, the ALJ gave "little weight"

to the opinion of Dr. Goffe, and instead made his RFC and ultimate disability findings in

accordance with the contrary evidence.[37]  The magistrate judge determined that the ALJ's

findings were supported by substantial evidence.[38]

Plaintiff asserts that the ALJ should have assigned "controlling" weight,[39] or at

---

[34] Id. at 10.

[35] Id. at 13.

[36] R. 20.

[37] Id.

[38] R&R at 10.

[39] Pl.'s Objections at 1.

least "greater" weight than he did,[40] to the opinion of Dr. Goffe as to Plaintiff's mental ability to

perform work-related tasks.[41]  She contends that Dr. Goffe's opinion was substantially in

agreement with the Clinical Psychological Disability Evaluation[42] and Medical Assessment of

Ability to Do Work Related Activities[43] of examining medical expert Dr. Christos Eleftherios,

Ed.D.,[44] and with an "overwhelming" amount of record evidence, particularly session notes from

Plaintiff's outpatient psychiatric treatment.[45]  The ALJ, however, viewed Dr. Eleftherios' reports,

---

[40]Pl.'s Objections at 9.

[41] R. 272-74.  In findings underlying his "Assessment of Mental Ability to Do Work-Related Activities," Dr. Goffe found that Plaintiff had "extreme" limitations, i.e., "no useful ability to function," in maintaining attention, concentration and dealing with stress.  Id. at 272.  He further found she had "marked" limitations, i.e., an ability to function that "is seriously limited, unsatisfactory, but not excluded," in relating to peers and dealing with the public; "moderate" restrictions, i.e., ability that is "limited but satisfactory," in using judgment, interacting with authority figures, and functioning independently; and "slight" or no limitations, i.e., an ability that is "more than satisfactory," in following rules and ability to be aware of hazards.  Id.

[42] R. 212-215.  The Evaluation was ambivalent in its findings and "guarded" in its prognosis of Plaintiff's psychological condition.  Id.  Dr. Eleftherios found that Plaintiff presented as an individual with bipolar disorder, "a personality disturbance," "characteristics of borderline personality disorder," instability in relationships, impulsivity, suicidality, and inappropriate anger.  Id. at 214-15.  He noted that, historically, these problems have been exacerbated by alcohol and cocaine use, but that Plaintiff had not been using drugs or drinking for at least six months.  Id. at 215.  However, in evaluating Plaintiff's present mental status, Dr. Eleftherios noted, among other things, that Plaintiff's "manner was generally appropriate," she was "cooperative and verbal," she responded to questions, her affect was "appropriate," her "thought processes were clear, logical and goal-directed," there was "no evidence of any underlying thought disorder," and while her attention span and recent memory were "poor," her concentration and "test judgment" were "fair."  Id. at 214.

[43] R. 216-18. In the Medical Assessment of Ability to Do Work Related Activities, Dr. Eleftherios rated Plaintiff as having "Good" or "Fair" abilities in each of the eighteen specific activities listed on the form, where "Good" meant "ability to function in this area is limited but satisfactory," and "Fair" meant "ability to function in this area is seriously limited, but not precluded."  Id.

[44] Pl.'s Objections at 3, 9.

[45] Pl.'s Objections at 4-9.  In support of her claim of "overwhelming" evidence of disability in treatment records, Plaintiff cites mainly to the outpatient progress notes made by social worker Veronica Seitzinger, MSW, who conducted therapy sessions with Plaintiff at Child & Family Support Services from April, 2003 through July, 2004.  R. 275-332.

as well as the RFC Assessment of non-examining medical source Dr. John Gavazzi, Psy.D.,[46] as inconsistent with the assessment of Dr. Goffe, and found a similar discrepancy as to Plaintiff's work capacity in the treatment notes and other evidence.[47]

It is the function of the ALJ to resolve conflicting evidence in the record.[48] Further, the responsibility for determining a claimant's RFC and ultimate disability status lies with the ALJ,[49] and not with a treating medical source, even where such source states that a claimant is disabled or unable to work.[50]

A treating physician's opinion on the extent of a claimant's impairment is generally entitled to more weight than the opinion of a non-treating medical source,[51] and should be accorded controlling weight if it is both well supported by medical evidence and not inconsistent with other substantial evidence in the record.[52]  However, the opinion of a treating physician may be discounted or rejected on the basis of contradictory medical evidence in the

---

[46] R. 219-21.  On March 21, 2003, Dr. Gavazzi completed an RFC Assessment which included a section for his "Summary Conclusions" as to Plaintiff's ability to sustain specified mental activities over a normal workday or work week, based on the evidence in Plaintiff's case file at that time.  Id. at 219.  Dr. Gavazzi concluded that Plaintiff was "Not Significantly Limited" in sixteen of the twenty activities set forth, and "Moderately Limited" in the remaining four activities specified.  Id. at 219-20.

[47] R. 20.

[48] Richardson v. Perales, 402 U.S. 389, 399 (1971).

[49] See 20 C.F.R. §§ 416.927(e)(1) & (2).

[50] See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); Social Security Ruling 96-5p, 61 Fed. Reg. 34471-72 (1996).

[51] Id.

[52] Fargnoli v. Apfel, 247 F.3d 34, 43 (3d Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

record.[53]  Any such rejection of a treating physician's opinion must be properly explained by the ALJ.[54]

The ALJ in this case applied appropriate legal standards and was supported by substantial evidence in rejecting the opinion of treating source Dr. Goffe as to Plaintiff's RFC and disability.  Further, the ALJ properly explained that he found Dr. Goffe's opinion to be "inconsistent with the clinical findings as well as [Plaintiff's] improved symptomology."[55]

The ALJ determined that the opinions of examining medical source Dr. Eleftherios and reviewing medical source Dr. Gavazzi were at odds with Dr. Goffe's opinion as to the nature and degree of Plaintiff's impairment.  Where Dr. Goffe rated Plaintiff as having "extreme" or "marked" limitations in ability to perform certain work related activities listed on an assessment,[56] Dr. Eleftherios rated her as having between "good" and "fair" abilities in similar or identical activities on a comparable assessment form.[57]  Dr. Gavazzi, a reviewing, non-examining source, also opined that Plaintiff's limitations in twenty specified work activities were "not significant" or, in some instances, "moderate."[58]

Leaving aside Dr. Gavazzi's assessment, which plainly contradicts that of Dr. Goffe, Plaintiff contends that Dr. Eleftherios' assessment was not inconsistent with Dr. Goffe's

---

[53] See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).

[54] Fargnoli, 247 F.3d at 43-44; see also Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

[55] R. 20.

[56] R. 272-74.

[57] R. 216-18.

[58] R. 219-21.

assessment that Plaintiff is disabled.[59]   In support, Plaintiff argues that Dr. Eleftherios' rating of

"fair" was equivalent to Dr. Goffe's rating of "marked", as those terms were defined on the forms

completed by the respective doctors.[60]   On Dr. Goffe's form, "marked" meant "ability to function

is seriously limited, unsatisfactory, but not excluded,"[61] while on Dr. Eleftherios' form, "fair"

was defined as "seriously limited, but not precluded."[62]   Plainly, the definitions are not identical,

but share in common the elements, "seriously limited " and "not precluded [or excluded]."

Courts elsewhere have reached differing conclusions as to whether an ability

rating of "seriously limited, but not precluded," qualifies as evidence of a disability for purposes

of the Social Security Act.[63]   It is this Court's view that such a rating places a claimant "in the

balance between poor ability to function and greater ability to function," such that the judge must

determine, after review of all appropriate sources, whether "the balance tips toward functional

ability or toward disability."[64]   Here, the ALJ determined, upon consideration of the entire

record,[65] that Dr. Eleftherios' "fair" ratings did not amount to an opinion that Plaintiff was

---

[59] Pl.'s Objections at 3, 9.

[60] Id. at 3, 4, 9, 11-12.

[61] R. 272-74.

[62] R. 216-18.

[63] Compare Cantrell v. Apfel, 231 F.3d 1104, 1107-08 (8th Cir. 2000) (holding that "fair" rating requires ALJ to determine whether claimant falls closer to functional ability or practical disability on ability spectrum), and Colvin v. Barnhart, 475 F.3d 727, 731 (6th Cir. 2007) ("[t]he plain meaning of 'seriously limited but not precluded' is that one is not precluded from performing in that area.  It defies logic to assert that a finding of 'not precluded' actually means that one is precluded."), with Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995) (holding that "a rating of 'fair' is evidence of a disability").

[64] See Cantrell, 231 F.3d at 1108; see also Klinger v. Barnhart, No. 02-1008, 2003 WL 21654994, at *5 (E.D. Pa. July 15, 2003).

[65] R. 20.  The ALJ noted his review of "the medical record as a whole" in approving Dr. Eleftherios' assessment.

disabled.  As a result, the ALJ could properly find that Dr. Eleftherios' opinion was inconsistent

with that of Dr. Goffe, who opined that Plaintiff was functionally unable to work, and hence

could validly cite Dr. Eleftherios' assessment as a reason to give Dr. Goffe's opinion "little

weight."[66]

Furthermore, substantial evidence in the record supports the ALJ's decision to

accord the medical opinions of Dr. Eleftherios and Dr. Gavazzi "significant weight."[67]   While

the record medical evidence contains data demonstrating that Plaintiff suffers from severe

impairments – as found by the ALJ – it also contains multiple reports, from various sources, that

support the opinions of Dr. Gavazzi and Dr. Eleftherios that Plaintiff retains work-related

abilities to some useful degree.  For example, in October, 2001, Plaintiff presented at Bornemann

Psychiatry Associates ("Bornemann") as "alert, goal oriented, intellectually aware,"[68] while in

her initial evaluation at Bornemann, she was assessed as having "logical and coherent" thought

processes,[69] and rated highly in terms of memory, cooperativeness, and being oriented.[70]

Bornemann notes from January and February, 2002, report that Plaintiff was "pretty good –

_____

[66] Plaintiff argues that the ALJ was obligated to attempt to re-contact Dr. Goffe in order "to clarify the basis for his assessment" before discounting it.  Pl.'s Br. at 11.  The ALJ was obligated to try to re-contact Dr. Goffe if he found the evidence received from Dr. Goffe to be inadequate for purposes of assessing Plaintiff's disability.  See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) ("[t]he requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability"); Palacios v. Barnhart, No. 04-4921, 2006 WL 3302443, at *3 (E.D. Pa. Nov. 13, 2006)(ALJ not required to re-contact if record adequate for purposes of disability determination).  Nothing appears in the record to suggest that the ALJ found Dr. Goffe's assessment to be inadequate for purposes of the disability determination; rather, the ALJ found the assessment to be inconsistent with other record evidence.  Hence, the duty to seek additional information from Dr. Goffe was not here triggered.

[67] R. 20.

[68] R. 118.

[69] R. 123.

[70] R. 124.

depression pretty good, sleeping pretty good," "alert," and "feeling better in terms of pain and

depression, which she relates to recent medication changes."[71]  In treatment notes from the St.

Joseph Medical Center made between April and September, 2003, Plaintiff was regularly

evaluated as "alert" and "oriented."[72]  A report from a partial hospitalization program in April,

2004,[73] noted that Plaintiff had organized thoughts, was pleasant, coherent, and oriented in all

spheres.[74]  The foregoing reports are substantial evidence supporting the ALJ's determinations.

       The Third Circuit has made it clear that "evidence is not substantial if it is

overwhelmed by other evidence."[75]  Plaintiff contends that "overwhelming" evidence appears in

the record that is contrary to the ALJ's determinations regarding the weight to be accorded to the

medical source opinions, particularly in the Outpatient Progress Notes from Child and Family

Support Services, Inc. ("CFSS").[76]  These detailed notes describe Plaintiff's regular meetings

with CFSS therapist Veronica Seitzinger, MSW, between April, 2003, and July, 2004.  They

consist of reports of Plaintiff's mood, appearance and energy during therapy sessions, recent

events in Plaintiff's relationships, as reported by her, and assessments of Plaintiff's progress in a

treatment plan involving compliance with medications, abstinence from drugs or alcohol, self

care, use of relaxation techniques, and other goals.  Notes from several sessions describe Plaintiff

---

[71] R. 113-14.

[72] R. 261, 262, 264, 267, 268, 270.

[73] The ALJ considered this episode as follows: "[a]lthough the claimant required partial hospitalization in April 2004, she had not been taking her medications and reported immediate improvement upon going back on them."  R. 20.

[74] R. 432.

[75] Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

[76] Pl.'s Objections at 3.

as agitated, unfocused, drained, upset, or hyperactive,[77] while notes from several other meetings describe her as feeling good, upbeat, energetic, compliant with her medication, and planning constructive activities such as visiting a senior center, reading, and joining the local library.[78] The notes do not include conclusions regarding Plaintiff's ability to perform work-related activities or her general capacity to work.  The Court finds that the ambivalent CFSS notes do not constitute "overwhelming" evidence in support of Dr. Goffe's assessment of Plaintiff's ability to perform work activities, or in contradiction of the opinions of Dr. Gavazzi and Dr. Eleftherios, and the evidence in the record which supports them.  Nor does "overwhelming" evidence for Plaintiff's position appear in the record as a whole, considered inclusive of the CFSS notes.

Instead, and in sum, the Court finds that the ALJ applied appropriate legal standards when weighing the opinions of the various medical sources in this case, and that substantial evidence supported the ALJ's determinations and findings with respect to the same.[79]

## 2.  Plaintiff's Second Objection

Plaintiff next argues that the magistrate judge erroneously recommended approval of the ALJ's finding that Plaintiff's medically determinable impairments did not meet or equal one of the affective disorder impairments listed in the Regulations.[80]  A claimant is deemed disabled for Social Security purposes if they are found to have impairments that meet or equal an

---

[77] See, e.g., R. 277, 280, 286, 288.

[78] See, e.g., R. 275, 283, 285, 289, 293.

[79] See, e.g., Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (holding that ALJ properly rejected treating physicians' opinions as inconsistent with other record evidence including opinions of state agency physicians); Plummer, 186 F.3d at 429; Frankenfield, 861 F.2d at 408.

[80] Pl.'s Objections at 10.

impairment in the Listings, in terms of both type and severity.[81]  Here, Plaintiff contends that her impairments meet or equal at least one of the impairments found in Section 12.04 of the Listings, for affective disorders.  The severity threshold for the disorders found in Section 12.04 is met when either the requirements of Parts A and B, or the requirements of Part C, are satisfied.[82] Plaintiff contends the magistrate judge wrongly concluded that the ALJ was supported by substantial evidence in finding that Plaintiff's impairments did not meet the severity threshold for Section 12.04, Parts A and B.[83]

Rather, Plaintiff asserts that her impairments satisfy the requirements of Parts A and B, and thus "meet or equal" an impairment in Section 12.04, qualifying her as disabled.[84] Because the ALJ found that Plaintiff's impairments meet the criteria for Section 12.04, Part A, her arguments regarding Part A need not be considered here.  The contested ground is the ALJ's finding that Plaintiff did not also meet the criteria for Section 12.04, Part B.

A claimant meets the criteria for Section 12.04, Part B, by demonstrating an affective disorder which "[r]esult[s] in at least two of the following: (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3) Marked difficulties in maintaining concentration, persistence or pace; (4) Repeated episodes of decompensation, each of extended duration."[85]  For purposes of Part B, "marked" is defined to

---

[81] 20 C.F.R. §§ 404.1525(a), 416.925(a).

[82] See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

[83] Pl.'s Objections at 10.  Plaintiff has never argued that her impairments meet the criteria of Section 12.04, Part C, and she has not requested review of the ALJ's finding that she does not satisfy the Part C requirements.

[84] Id.

[85] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

mean "more than moderate but less than extreme," and applies where "the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."[86]  The ALJ here determined that Plaintiff did not satisfy the Part B criteria, stating, "the record as a whole supports a finding that the claimant's mental impairment results in mild restriction in activities of daily living, moderate difficulties with social functioning, moderate difficulties in maintaining concentration, persistence or pace," and no extended episodes of decompensation.[87]

Plaintiff objects to the magistrate judge's determination that these findings were appropriate.  Repeating her argument that the assessments of Doctors Goffe and Eleftherios are in agreement as to her degree of impairment, Plaintiff contends that those doctors' opinions and the treatment notes from Bornemann and CFSS "support a finding" that Plaintiff has "marked" limitations, meeting the criteria of Part B.[88]  Plaintiff thus invites the Court to re-weigh the evidence already evaluated by the ALJ, misconstruing our present task.[89]  She also raises the separate but related argument that the ALJ misapplied the governing legal standards by failing "to obtain an updated opinion from a medical expert where the medical evidence suggests that a finding of equivalence may be reasonable."[90]

The former argument is unavailing.  Rather, the Court finds that substantial

---

[86] 20 C.F.R., Part 404, Subpt. P, App. 1, Regs. No. 4, § 12.00C.

[87] R. 18.

[88] Pl.'s Objections at 10-13.

[89] It bears reiterating that the Court's obligation in this review is not to re-weigh the record evidence to determine whether alternative findings to those actually made by the ALJ might be "supported;" it is to assess whether the ALJ reached findings supported by substantial evidence in a fashion comporting with the governing law.

[90] Pl.'s Objections at 12.

evidence supports the ALJ's finding that Plaintiff does not have "marked" limitations, and thus does not satisfy the criteria of Section 12.04, Part B.  First, as discussed *supra*,[91] the ALJ properly determined that "fair," in the assessment by Dr. Eleftherios, and "marked," in the assessment by Dr. Goffe, had discrepant meanings, and that the opinions of the two doctors were ultimately inconsistent with one another.  This determination is supported by substantial evidence in the record, thus vitiating Plaintiff 's argument that the two doctors' assessments must be interpreted similarly in the present analysis despite the finding of the ALJ.

Likewise, and contrary to Plaintiff's contentions, Dr. Eleftherios' opinion may constitute substantial evidence in support of the ALJ's finding that Plaintiff did not suffer from "marked" limitations of the sort required by Section 12.04, Part B.  Again, as discussed *supra*,[92] considering all medical evidence, the ALJ effectively determined that Dr. Eleftherios' "fair" ratings were, on balance, an assessment that Plaintiff's capacity to work "tip[ped] toward functional ability."[93]  Such a determination readily permits a finding that Plaintiff's impairments do not rise to the level of "marked" for purposes of Part B.[94]  Further, the opinion of Dr. Gavazzi and treatment notes from both Bornemann and CFSS seen already are also substantial evidence supporting the finding of the ALJ on this issue.

With regard to Plaintiff's argument that the ALJ was obligated by law to seek an updated medical opinion, the Court cannot agree.  As relevant here, an ALJ is required to obtain

---

[91] Section III.e.1.

[92] Id.

[93] See Cantrell, 231 F.3d at 1108; see also Klinger, 2003 WL 21654994, at *5.

[94] 20 C.F.R., Part 404, Subpt. P, App. 1, Regs. No. 4, § 12.00C.

such an opinion when, "in the opinion of the ALJ, the [evidence] in the case record suggest[s] that a judgment of equivalence may be reasonable."[95]   However, in this case, nothing indicates that the ALJ believed that "a judgment of equivalence may be reasonable."  Such a position was supported by substantial record evidence in the form of the assessments of Dr. Eleftherios and Dr. Gavazzi, and various treatment notes from Bornemann and CFSS.

In sum, the ALJ properly reached the conclusion that Plaintiff did not satisfy the criteria of Section 12.04, Part B, and this conclusion was supported by substantial evidence.

### 3.  Plaintiff's Remaining Objections

Finally, Plaintiff registers nominal objections to all remaining elements of the R&R[96]  Plaintiff objects that substantial evidence did not support the ALJ's finding that she retained the RFC to perform light work; that substantial evidence did not support the ALJ's determination that she was "not entirely credible"; and that substantial evidence did not support the Commissioner's final decision that she is not disabled.  Magistrate Judge Restrepo, after thorough analysis, found otherwise.  Unfortunately, Plaintiff fails to specifically address any aspect of the magistrate judge's analysis.  She makes no particularized arguments whatsoever. Instead she attempts to refer this Court to arguments contained in a brief she submitted long before the magistrate judge's report issued.[97]  As a result, these final objections appear to be *pro forma* rather than any sort of considered response to the R & R.  Nonetheless, the Court will address each objection in turn.

---

[95] SSR 96-6P; see also Lilly v. Barnhart, No. 02-8322 2004 WL 875545, *4 (E.D. Pa. March 22, 2004).

[96] Pl.'s Objections at 13.

[97] Id. (referring to Pl.'s Br. Summ. J.).

First, the ALJ's finding as to Plaintiff's RFC was properly reached, and was supported by substantial evidence. The ALJ concluded that Plaintiff had the RFC to perform light work, but that her RFC should be modified to include rote and routine mental tasks, a stand-walk at will option, a controlled work environment, infrequent use of stairs, avoidance of repetitive use of the hands, low stress, and low demands on concentration and focus.[98] In so finding, the ALJ gave little weight to the questionnaire completed by treating source Dr. Einsig regarding Plaintiff's physical limitations in work activities,[99] in which Dr. Einsig opined that Plaintiff was incapable of working an eight-hour work day.[100] The ALJ discounted Dr. Einsig's opinion because he found it "overstate[d]" Plaintiff's limitations and was inconsistent with other record medical evidence.[101]

Under the Regulations, the ALJ had "the final responsibility" for determining Plaintiff's RFC.[102] However, in making the determination, he was obligated "not to give any special significance to the source of an opinion" regarding the RFC,[103] to adequately identify the evidence rejected in reaching his conclusion,[104] and to reject a treating physician's opinion only if it was contradicted by other record medical evidence.[105]

---

[98] R. 23.

[99] R. 247-50.

[100] R. 20.

[101] Id.

[102] 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

[103] Id.; § 416.927(e)(3); SSR 96-5p.

[104] See Cotter, 642 F.2d at 705.

[105] See Plummer, 186 F.3d at 429; Frankenfield, 861 F.2d at 408.

The ALJ's finding regarding Plaintiff's RFC, including his rejection of the opinion of Dr. Einsig, is supported by substantial medical evidence in the record. The ALJ gave "significant weight" to the conclusion of Donald Reid, MD, who reviewed all medical evidence in Plaintiff's Social Security file in April, 2003, and stated, "[Plaintiff] [a]lleges physical limitations relative to walking and standing which are not well supported . . . [c]laimant thought capable of light work capacity."[106] Doctor Reid noted that in his view Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk with normal breaks for a total of six hours in an eight-hour workday, sit with normal breaks for a total of six hours in an eight-hour workday, and perform push-pull motions without notable limitation.[107] Explicitly supporting these assessments, he noted that Plaintiff's medical records showed, among other things, "no large focal disc protrusions," "minimal spondylitic ridging," "small cervical disc protrusions," and "no evidence of canal stenosis."[108] Further medical evidence in the record appears to support the finding of the ALJ. For example, a physical examination report made at St. Joseph Medical Center in September, 2003, represents Plaintiff as in no acute distress, with an "unremarkable" chest x-ray, "no clubbing, cyanosis or edema" in her extremities, without "neurological deficits," and with lungs "clear to auscultation, [with] no wheezes, rales or rhonchi."[109] Treatment notes from Dr. John Martin, Jr., from earlier in 2003, also show Plaintiff in no acute distress, with appropriate mood and affect, only "mildly tender to palpation

---

[106] R. 209.

[107] R. 205.

[108] R. 205.

[109] R. 426.

throughout her entire cervical spine," and without muscle spasms.[110]  Dr. Martin noted in June,

2003, that Plaintiff was walking five miles a day, "continu[ing] her walking program."[111]  The

ALJ in his Decision accurately cites to several other instances of medical evidence in the record

of a similar nature.[112]  Thus the Court finds that the ALJ properly marshaled record medical

evidence to support and explain his rejection of Dr. Einsig's opinion regarding Plaintiff's

physical limitations, and that the record contains substantial evidence supporting the ALJ's

finding of Plaintiff's RFC.

      Next, Plaintiff contends that the ALJ's adverse credibility determinations were not

supported by substantial evidence.  The ALJ was permitted to "reject Plaintiff's subjective

complaints on the basis that Plaintiff [was] not credible, as long as the underlying reasoning for

such a finding is explained and supported by the record."[113]  Here, the ALJ determined that

Plaintiff's claims "concerning her symptoms and limitations [were] not entirely credible"

because they were inconsistent with medical evidence and other evidence of her activities in the

record.[114]  The ALJ therefore gave Plaintiff's claims "only limited weight."[115]

      Examples of inconsistencies identified by the ALJ include: Plaintiff's complaints

of difficulty lifting objects weighing more than five pounds,[116] while she reported elsewhere in

---

[110] R. 130.

[111] R. 238.

[112] R. 19.

[113] See Duncan v. Sullivan, 786 F. Supp. 466, 470 (E.D. Pa. 1992).

[114] R. 19.

[115] Id.

[116] Id.

the record that she voluntarily engaged in strenuous activities such as moving furniture or lifting her twenty-six pound grandchild,[117] and Plaintiff's claim emphasizing that she could not walk more than three blocks without a back brace,[118] while progress notes from her orthopedist state that Plaintiff had been walking five miles per day.[119]  Further, Plaintiff's progress notes made by her therapist include description of her subjective complaints as "very melodramatic."[120]  These examples constitute substantial evidence in support of the ALJ's credibility determination, and also suffice to show that the ALJ adequately explained his finding on this issue.[121]

In light of the prior analysis, Plaintiff's objection that the Commissioner's final decision as to her disability status is unsupported by substantial evidence is without merit.  The Court has found that each of the challenged aspects of the ALJ's decision were reached through proper application of law and were supported by substantial evidence.

## IV.  CONCLUSION

For the foregoing reasons, the Court overrules Plaintiff's objections, and approves and adopts the exemplary Report and Recommendation of Magistrate Judge Restrepo.

An appropriate Order follows.

---

[117] R. 469, 382.  In each instance of vigorous exertion cited here, Plaintiff subsequently complained of neck pain.  Id.  This does not change the fact that the evidence of these voluntary exertions could validly give rise to skepticism regarding her claim of difficulty lifting five pounds.

[118] R. 19.

[119] R. 238.

[120] R. 169.

[121] See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **CAROL NOTOBARTOLO,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL NO. 06-2128** |
| | : | |
| **MICHAEL J. ASTRUE,**[122] | : | |
| Commissioner of Social Security, | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

**AND NOW**, this 18th day of December 2007, upon consideration of Plaintiff's Brief and Motion for Summary Judgment [Doc. No. 8], Defendant's Motion for Summary Judgment [Doc. No. 10], Plaintiff's Reply Brief [Doc. No. 12], Magistrate Judge Restrepo's Report & Recommendation [Doc. No. 15], Plaintiff's Objections thereto [Doc. No. 16], Defendant's Response [Doc. No. 17], and the Record in the above-captioned matter, it is hereby **ORDERED** that:

(1)   Plaintiff's Objections are **OVERRULED**;

(2)   The Report and Recommendation is **APPROVED AND ADOPTED**;

(3)   Plaintiff's Motion for Summary Judgment is **DENIED**;

(4)   Defendant's Motion for Summary Judgment is **GRANTED** and **JUDGMENT IS ENTERED** in favor of Defendant, **AFFIRMING** the decision of the Commissioner of Social Security; and

(5)   The Clerk of Court is hereby directed to **CLOSE THIS CASE.**

---

[122] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, replacing Jo Anne B. Barnhart.  Therefore, in accordance with Federal Rule of Civil Procedure 25(d)(1), Mr. Astrue is substituted for Ms. Barnhart as the Defendant in this action.

It is so **ORDERED**.

**BY THE COURT:**

/s/ Cynthia M. Rufe

_____

**CYNTHIA M. RUFE, J.**